Case No. 16-1100, Free Access & Broadcast Telemedia, LLC at L. Petitioners v. Federal Communications Commission at L. Mr. Manesheim for the Petitioners, Mr. Shurer for the Respondents. Mr. Manesheim, good morning. We meet again. We do. Good morning. May I please report? This is the case where the rubber hits the road on the FCC's incentive spectrum auction. It's the third time before the court, but it's the first appeal raising the real-world consequences of LPT extinguishment. I use that word carefully because this is a game of musical chairs in which 39 months from now, following this repack the organization, there's no room left for LPTV. Unfortunately, we're met essentially with an agency that engages in administrative doublespeak and misdirection. Let me tell you exactly why and what the issue before you is. Judge Srinivasan wrote the opinion on which Judge Griffith was on the panel in MAKO in August 2006, interpreting for the first time the spectrum act. Two other FCC orders are at issue here. They were decided before MAKO, implementing that auction. Both of the orders violate the MAKO holding that says LPTV's spectrum usage rights cannot be altered on the basis other than interference. They also raise other issues under the Regulatory Flexibility Act and the APA that I will address. The record shows, Your Honors, that this agency claimed in its orders that the spectrum act was not a constraint on its substantive authority. That's why in the supplemental orders decided before MAKO, they don't address LPTV. What they do, very cleverly, is disguise their decision in these orders to assign exclusive rights to the spectrum to the new wireless carriers. Exclusive is the word they use, not me. They want to clear the spectrum. It's the RF, radio frequency equivalent of a subdivision developer coming in and cutting down all the trees and bushes and building new houses. The court rejected the contention that the spectrum act was not a constraint on their authority in MAKO. The idea of exclusive assignment of this new 600 MHz band to the wireless carriers flatly violates that holding. You should reverse for the same reasons. Let me address the two orders. The first and most important... Can you just focus our attention on how the challenges that you raise survive the jurisdictional objections that have been... Of course, of course. The first objection is that we were required to file comments in the commencing operations order, and therefore we don't meet the Hobbs Act 2344. Now, without getting into the fact that the FCC wants to have it both ways, they say it's the same proceeding for purposes of binding us in a different proceeding. This court's precedent requires that the other proceeding be procedurally and substantively independent from the challenge order. The auction order decided that when a new wireless carrier commences operations, LPDB has to leave, but it didn't define commencing operations. It also... I thought the key language in Simmons was separate notices received different comments concluded by separate rules promulgated on different dates. That seems to describe this case to a T. Well, I would disagree, Your Honor. I think that the language is the language that the FCC quotes, relies on, and the ones that they look to, Masuka, the 11th Circuit case, about that the second proceeding must be procedurally and substantively independent. Okay? More importantly, there was no new NPRM. Can I just get one clarification, then? Yes, sir. On the language that Judge Griffith just quoted to you... Yes, sir. Do you think that if that language covers that you're out of luck? No, I don't. There was no new NPRM issued. This was simply a public notice, okay? It decided something that was in principle approved in the first order, but implemented in the second order. So they are intricately... I can't say the word. Intricately related. They are not independent at all. And the basic issue is how many times do we have to say the same thing? Our petitioners have participated in every proceeding where they got notice that their rights would be affected. They had no idea about this commencing operations order that the FCC was going to slip in, due to the portions of the order in the brief, an exclusive assignment of this spectrum to the new wireless carriers. So they've been there. They've been making the same claims all along. It violates the Act. It's unfair under the APA. And it deprives us of due process and takes our property every single time. So at the very least, once you get past 2344, because I think it clearly is a different proceeding... I mean, clearly you're the same proceeding. Same docket number. No new NPRM. And besides an issue. Once you get past that, it's only a question of 405A, issue preservation, which you have discretion and you clearly need. As I understand the lay of the land, we know by the time of the latest order that there's going to be some definition given to the concept of commencing operations. Everybody knows that. Yes. People don't know exactly what that definition is going to be. But what we know beforehand is that there is this idea about commencing operations. And once operations have commenced, then the LPTV station gives way to the other entity. No, the concept in the original order, with due respect, Judge, was that when the new carrier commences operation, the LPTV station needs to give away or adjust itself so it doesn't interfere. That is not the case in this second order. I would fight for it, and I'll just do this because I don't want to run out of time. Joint Appendix 567, Paragraph 7. 600 MHz carriers have, quote, exclusive access to their spectrum, close quote. Joint Appendix 571, Paragraph 16. The license does include the right to exclusive use, close quote, of the spectrum. Those are decisions reached in this order, not in the first order, not foreshadowed, not put out for public comment, and that the FCC, in the order, said, do not violate the Act, for the reason I said before, because they said the Act wasn't a constraint. It's also in the FCC's brief, carefully buried on pages 22 and 33. Access to their spectrum as soon as they're ready to deploy. And one more point. In the 28J notice that was filed on Friday, Paragraph 11. Eligible LPTV stations may only apply for a channel that remains allocated to broadcast television and not for channels that have been repurposed for the new flexible 600 MHz band wireless services. If we are displaced, we can't even apply to serve in the 600 MHz band. Exclusive is the opposite of secondary rights. And this agency, in these orders, has not been forthright in saying that they made an exclusive assignment. The auction order never mentions it. It doesn't do it. And to suggest that the wireless carriers who have purchased the spectrum will be repurposed so that they have the right to kick us out violates MACO. That means that the 39-month period and the difference between actual and potential interference are very much secondary. I'm happy to address them if the Court likes. I think we're right on that as well. I think this Court in MACO, when it said no displacement without interference, meant interference. It didn't mean a prediction of likely interference in the future. And as we cite in our reply brief, for 30 years the FCC has used the criterion of harmful interference. Actual interference. And the way it works is if someone causes interference, the FCC's rules don't require them to shut down. They require the other party to go to the FCC, file a complaint, and get an order. That requires someone who's interfering to shut down. Same thing with Part 15 devices. Let me just make one more point, unless the Court has questions. I think that the constitutional issues are important, but they are not as important as the Regulatory Flexibility Act. The Regulatory Flexibility Act is the Rosetta Stone to this case. It's the Rosetta Stone because our principal claim there is that they didn't quantify the impact on LPTV or explain why quantification was impossible. That's the first clear requirement of the statute. They do not meet that. They don't defend their inability to meet it. But what they said from day one is that many LPTV stations will be displaced. I'm sure they'll still claim that. They don't know how many, right? And that is because they didn't do the quantification. They can do it with their database. It's very simple. There's only 23 stations left for LPTV, 13 to 36. You have to have channel spacing rules every other station. That leaves 11 in any market where there's 11 existing full-power VHF and UHF stations, and that's most of the country. Clearly, all 30 major markets were gone and were dead in 39 months. Thank you. All right. Mr. Scherer. Good morning. May it please the Court, Bill Scherer for the Federal Communications Commission. I'd like to focus on two points today. First, the petition for review is time-barred. Petitioners are challenging prior settled FCC decisions, not the decisions in the orders on review. Second, if the Court reaches the merits, the MACO decision forecloses most of the petitioner's claims. And the petition for review is time-barred. All of the petitioner's arguments concern three FCC decisions from the original auction order in 2014. First, not to protect LPTV in the repacking. Second, the displacement process. And third, the ban plan for cleared spectrum. The time has expired for appealing the 2014 auction order, as well as a reconsideration order that affirmed the FCC's decisions. The FCC addressed distinct issues in the orders on review, and it refused to reopen its prior decisions. Notably, petitioners haven't addressed this point in their briefs except to argue that the Court could apply MACO to overturn the FCC's prior decisions. But that argument ignores the jurisdictional deadlines imposed by the Hobbs Act. If the Court reaches the merits... What about what you just heard this morning to the effect that, look, you can obviously challenge something new in a new order. That, I think as a general principle, is true. Your position is they're not challenging anything new. All the stuff that they're challenging actually was wrapped up in the order that was challenged in the MACO, and so they missed the time. That's correct, Your Honor. The decision not to protect LPTV in the repacking was the threshold and the premise for the Commission's channel sharing order and proceeding, where the Commission was looking at ways to mitigate the potential impact of the auction as a result of its prior settled decision not to protect LPTV. In fact, it, again, refused to reopen the prior decision. And what they're saying this morning is that we didn't know until the latest order how exclusive is exclusive, and now something's clarified that was not on the radar screen beforehand, and so the Hobbs Act deadline doesn't apply because what we're now challenging is something that only manifests itself. Your Honor, their positions are focusing on this phrase, exclusive access. I think that all exclusive access means, in the places where they refer to it, is that once a wireless provider is ready to commence operations on its licensed spectrum, it's entitled to access to that spectrum without harmful interference from any secondary operations, including LPTV. The Commission established the displacement process in all respects, except for the one question that it left open of how to define commencing operations in that 2014 auction order. So there weren't any surprises. The displacement process makes absolutely clear that at a given point in time, the wireless provider will be entitled to exclusive access, meaning access without interference. Okay, so then you're wrapping up the concept of interference into the term exclusive, and so that, I think, potentially squares things, whereas their view is that exclusive means something without regard to interference. Correct, Your Honor. The FCC's description of exclusive access has always been in the context of proceedings where it's made clear that LPTV stations are entitled to continue operating unless and until there's notice provided of the potential for likely interference, and that's the trigger. So whenever the Commission says exclusive access, that's conditioned. There's already been a determination of potential or likely interference. Correct, and there's no reference to exclusive access in any of the Commission's orders where the Commission indicated or suggested that it was setting up a different or new standard. In fact, the Commission refused to reconsider its prior decisions. If the Court reaches the merits, as MACO forecloses arguments regarding FCC treatment of LPTV and the displacement process, the displacement argument is based on a misunderstanding. Petitioners have conceded that they relied on the wrong rule in their opening brief. The correct rule, Section 733700G4, allows LPTV stations to continue operating until a wireless provider actually displaces them, and the Court recognized this rule in MACO. Petitioners' arguments regarding treatment of LPTV are rehashed versions of arguments rejected in MACO. MACO affirmed the FCC's decision not to protect LPTV in the repacking because protection would have frustrated auction goals by limiting the recovery of spectrum for the forward auction. Now, petitioners now say that they're challenging or advocating something other than protection, but the Court's holding plainly encompassed the FCC's choices not to include LPTV in the repacking or set aside channels for LPTV after the auction, and those choices were inherent in the protection decision. Petitioners' remaining argument is that the FCC altered LPTV rights by subordinating them to unlicensed in the cleared spectrum. There's at least two problems with that argument. The first is that it's barred by the Spectrum Act, which provides that the FCC's establishment of ban plans for cleared spectrum isn't subject to any LPTV rights under Section 1452b-5. In addition, the only cleared spectrum where unlicensed use is allowed is the guard bands, and petitioners disavow any challenges to the guard bands, so they seem as though they may have waived that argument. In conclusion, I'd just like to focus on two things that my opposing counsel said. The FCC's rules governing interference don't require a primary station that's being interfered with to come to the FCC and file a complaint in order to get clear or, if you will, exclusive access to its spectrum. All of the FCC's rules refer to predicted interference and require LPTV stations to resolve predicted interference. You won't find in the rules any reference to quote-unquote actual interference. If there are no other questions, then I'll thank you. All right. Thank you. Does Mr. Mann have any time? I'm going to take two minutes. I'll make a couple points. Non-protection is not an issue in this case. As I said in the brief, we were never arguing that we were entitled to be protected in the repack. With regard to jurisdiction, I will concede there's nothing in these orders about unlicensed wireless. At that point, we were very forthright. We believe MACO was decided judiciously by deciding only what needed to be decided. But it's this Court's mandate, and those issues of unlicensed wireless and the second one, which is priority for the issues that were not reached in MACO, can be used as the basis by this panel. And even if we are time barred under 2344 under the Hobbs Act, the Court, whether it's this panel or another panel, has the authority and the ability to enforce the rule of MACO. Now, let me say that counsel's explanation of what exclusive access means is not in the record. It's not in any of the FCC proceedings. It's not in any of their orders. His interpretation of the orders is not argument. You are not entitled to rely upon them. The Court has said that for years. My reply brief, I believe it's footnote 22, cites 30 years of precedent that define harmful interference. Harmful interference can only mean actual interference. Exclusive is a word and a phrase first used in the proceedings. They say, this is the paragraph 16, joint appendix 571, while a license issued for the 600 megahertz band does include the right to exclusive use, it does not include the immediate right to exclude for the entire license area, the immediate right. So this idea of technical interference is a charade. It's also wrong. In their brief, which we point out on reply, they say that it is technically impossible for LPTV and wireless to cohabitate the 600 megahertz band. I don't have the citation handy, but we cite to their reply brief. That, again, is from the lawyers. But if that's correct, that explains why they've been using the word exclusive and exclusive rights because it would be impossible for any LPTV to survive if they both can't do it as a technical matter. Thank you. All right. Thank you. Next page.
judges: Henderson, Griffith, Srinivasan